# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO WESTERN DIVISION

| | | |
|---|---|---|
| **Allied Construction Industries** | : | |
| **3 Kovach Drive** | : | **Case No. 1:14-cv-450** |
| **Cincinnati, Ohio 45215,** | : | |
| | : | **Judge** |
|     **Plaintiff,** | : | |
| **v.** | : | |
| | : | **VERIFIED COMPLAINT FOR** |
| **City of Cincinnati** | : | **TEMPORARY RESTRAINING ORDER,** |
| **801 Plum Street** | : | **PRELIMINARY INJUNCTION, AND** |
| **City Hall** | : | **PERMANENT INJUNCTION** |
| **Cincinnati, Ohio 45202,** | : | |
| | : | |
|     **Defendant.** | : | |

## INTRODUCTION, JURISDICTION, AND VENUE

In this Complaint for injunctive and declaratory relief, under 28 U.S.C. § 1331, 28 U.S.C. § 2201, *et seq.*, and 29 U.S.C. § 1001, *et seq.* Plaintiff Allied Construction Industries ("ACI") asks that the Court: declare portions of Defendant, City of Cincinnati's (the "City") Responsible Bidder Ordinances unlawful and preempted by the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§1001 *et seq.*; enjoin enforcement thereof, and Order the City to award construction projects in accordance with applicable Federal and State procurement law.

Proper venue for this action is the Southern District, Ohio, Western Division. The City exists within this District; and all events or omissions giving rise to the claim occurred within this judicial district.

Plaintiff for its Complaint against the City states as follows:

1. ACI is a not-for-profit trade association comprised of approximately 580 member companies who employ more than 30,000 individuals throughout the Greater Cincinnati area. ACI's membership includes general contractors, subcontractors, architects, engineers,

developers, material suppliers and service providers to the commercial construction industry. Many of ACI's members provide construction services for both public and private projects in the southwestern Ohio trade area. ACI's membership includes both union and open shop contractors.

2. The City is a municipal corporation located in Hamilton County, Ohio, and which is organized and existing under the law of the State of Ohio.

3. ACI's members currently bid and intend to continue to bid on public projects on which the City is an owner or on which the City, County, State and Federal funds are expended and to which the City applies its Apprenticeship Requirements and Pre-Apprenticeship Training Fund, which are preempted by ERISA. In light of the City's Municipal Codes and its policies and procedures, ACI's members cannot compete on an equal footing in the bidding process although they are qualified, willing, and able to bid on contracts but for the City's requirements that prevent them from doing so on an equal basis.

4. ACI's members have submitted bids on public waterworks projects that are at issue herein and intend to submit bids on future public waterworks projects for which they will be found non-responsive and will be rejected because they are unable to meet the unlawful Apprenticeship Requirements under Cincinnati Municipal Code ("CMC").

5. ACI has legal standing to challenge laws, customs, and policies which adversely affect its members under well-established legal doctrines. See *Florida Chapter of Assoc. General Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 668-669 (1993) and *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004), (an organization "has standing to sue on behalf of its members when 'its members would otherwise have standing to sue in their own right, the interests at stake are germane to the

organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'")

6. The City's preempted and unlawful codes and practices include but are not limited to:

   a. CMC 320-5(a) requires that each bidder certify that for the duration of the project, the bidder will maintain or participate in an apprenticeship program for the primary apprenticeable occupation on the project;

   b. CMC 320-5(b) requires that each bidder certify that for the duration of the project, the bidder's subcontractor(s) who perform work in the primary apprenticeable occupation for the project will maintain or participate in an apprenticeship program for that primary apprenticeable occupation;

   c. CMC 320-5 requires that a bidder must produce documentation including the following information regarding the apprenticeship program the bidder plans to maintain or participate in during the project: the occupation code, apprentice identification number, and indenture date for at least one apprentice that has graduated from the apprenticeship program from each of the past 5 years;

   d. CMC 320-3(j) requires that the bidder shall certify whether it provides, or contributes to, a health care plan for those employees working on the project and shall provide a copy of the health plan upon request. The contributions toward a health care plan must be part of the employee's regular compensation, and not merely part of the employee's compensation during the period of time for which the employee is performing work on the project;

   e. CMC 320-3(k) requires that the bidder shall certify whether it contributes to an employee pension or retirement program, including, but not limited to, a 401K, a defined benefit plan, or similar plan, for its field employees working on the project and shall provide a copy of the plan upon request. The contributions toward a pension or retirement program must be a part of the employee's regular compensation, and not merely part of the employee's compensation during the period of time for which the employee is performing work on the project;

   f. CMC 320-7 requires contractors to pay ten cents per hour per worker into an MSDGC fund 701 for a pre-apprenticeship program that ensures that a majority of its trainees are women, people of color, residents of low-income communities, and/or veterans.

## BACKGROUND

## CITY'S APPRENTICESHIP-REQUIREMENT ORDINANCE

7. In July 2012, the City enacted an Apprenticeship Requirement which was ordained by

Ordinance No. 282-2012 and codified in CMC 320-5 requiring that bidders and their subcontractor(s) maintain or participate in an apprenticeship program. A full and accurate copy of CMC Chapter 320 is attached hereto as Exhibit A.

8. CMC 320-5 was enacted purportedly to ensure (1) that the contractors hired to work on City projects are in compliance with all federal, state, and local laws and that they provide their works with fair compensation and benefits and establishing these compliance guidelines and (2) efficient use of taxpayer dollars, minimize waste, and promote worker safety and fair treatment of workers. See Exhibit A.

9. The City applies the Apprenticeship Requirement to public-improvement projects for which City, State, and Federal funds are expended, it applied them to the Projects at issue here, and it will continue to apply them to future construction projects.

10. The City applies the Apprenticeship Requirements to every construction contract under CMC 320-3.

11. At the request and urging of certain labor unions, the City amended its Apprenticeship Ordinance on June 1, 2013 to require that the bidder maintain or participate in an apprenticeship program for the primary apprenticeable occupation on the project and provide the indenture date for at least one apprentice that has graduated from the apprenticeship program for each of the past five (5) years. This legislative change had the effect of making union apprenticeship programs the only programs that met the Apprenticeship Requirement, thereby disqualifying all open-shop contractors, including Plaintiff's members from satisfying the newly enacted requirements. Some of the City Council Members who voted for the Ordinance received at least 30% of their reported campaign contributions from union related sources.

12. As a penalty, a bidder not in compliance with the Apprenticeship Requirement shall not be awarded a construction contract as the bid would be considered non-responsive.

13. The failure of a bidder to comply during the performance of the construction contract shall constitute a material breach and may subject the bidder to all remedies available to the City at law, including, but not limited to (1) disqualification of the bidder from bidding on current or future contracts, (2) suspension of payments to the bidder under the construction contract, and (3) termination for cause. See Exhibit A at CMC 320-5.

14. The City's Apprenticeship Requirements, as set forth in CMC 320-5 have been preempted by Federal law as set forth in greater detail below.

## CITY'S PRE-APPRENTICESHIP TRAINING FUND

15. In July 2012, the City enacted the Pre-Apprenticeship Training Fund, which was also ordained by Ordinance No. 282-2012 and codified in CMC 320. See Exhibits A.

16. Under the Pre-Apprenticeship Training Fund, contractors are required to pay 10 cents per hours per worker into MSDGC (Metropolitan Sewer District of Greater Cincinnati) Fund 701 for the purpose of funding qualified Pre-Apprenticeship programs that will create a pipeline of opportunities from recruitment to placement to retention. See Exhibit A at CMC 320-7.

17. CMC 320-7 provides that these required payments shall not be taken from the fringe benefits of the contractor's employees. See Exhibit A.

18. The City's Pre-Apprenticeship Training Fund, as set forth in CMC 320-7 has been preempted by Federal law as set forth in greater detail below.

## CITY'S FACTORS IN DETERMINATION OF LOWEST AND BEST BIDDER

19. In July 2012, the City enacted Factors in Determination of Lowest and Best Bidder,

which was also ordained by Ordinance No. 282-2012 and codified in CMC 320. See Exhibits A.

20. As enacted in July 2012, CMC 320-3(j) required that "the bidder shall certify that it provides, or contributes to, a health care plan for those employees working on the project and shall provide a copy of the health plan upon request."

21. Ordinance No. 114-2013, effective June , 2013, revised CMC 320-3(j) requiring that "the bidder shall certify whether it provides, or contributes to, a health care plan for those employees working on the project and shall provide a copy of the health plan upon request."

22. As enacted in July 2012, CMC 320-3(k) required that "the bidder shall certify that it contributes to an employee pension or retirement program, including, but not limited to, a 401K, a defined benefit plan, or similar plan, for its field employees working on the project and shall provide a copy of the plan upon request."

23. Ordinance No. 114-2013, effective June , 2013, revised CMC 320-3(k) requiring that "the bidder shall certify whether it contributes to an employee pension or retirement program, including, but not limited to, a 401K, a defined benefit plan, or similar plan, for its field employees working on the project and shall provide a copy of the plan upon request."

24. The City's Factors in Determination of Lowest and Best Bidder, particularly CMC 320-3(j) and CMC 320-3(k) has been preempted by Federal law as set forth in greater detail below.

## GENERAL OVERVIEW OF THE PROGRAM

25. The City has embarked on a significant water works upgrade program that will result in $15-20 million of construction projects being let by the City's Water Works Division.

26. In July 2012, the City enacted the Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) that are at issue herein.

27. In June 2013, the City amended CMC 320-5, at the request and urging of certain Laborer's Unions, to require that the bidder provide the indenture date for at least one apprentice that has graduated from the apprenticeship program for each of the past five (5) years. This amendment also provided that the apprenticeship program maintained or participated must be for the primarily apprenticeable occupation. For the projects at issue the primary trade is laborers. At the time of this amendment, there were no labor apprenticeship programs that had operated for five years, except for the labor unions.

28. On or about January 16, 2013, Rack & Ballauer Excavating Co., Inc. ("R&B"), RB South, Inc. and Randy Rack filed a Complaint for Preliminary Injunction, Permanent Injunction, and Damages against the City of Cincinnati as well as other defendants challenging CMC 320-5(b), CMC 320-7, CMC Chapter 318, and some other procurement laws, practices, and policies of the City. The United States District Court for the Southern District of Ohio, Western Division, in denying the Plaintiffs' Motion for a Temporary Restraining Order, found that CMC Chapter 318, the local hiring and disadvantaged worker requirements, had been temporarily suspended at the time that Plaintiffs had submitted their bids, and thus, the requirements of CMC Chapter 318 were not applied to the Plaintiff in evaluating their bids, therefore, Plaintiffs did not have standing to challenge CMC Chapter 318. The Court also held that Plaintiffs did not have standing to challenge CMC 320-5(b) and CMC 320-7 as they had indicated in their bid that they were an "exempt entity." See *Rack & Ballauer Excavating Co., Inc. v. City of Cincinnati*, 1:13-

CV-30, 2013 WL 503129 (S.D. Ohio Feb. 8, 2013).

29. While R&B et al.'s Motion for Temporary Restraining Order was denied on justiciability grounds, the Court stated that as to CMC Chapter 320, "Plaintiffs have also provided fairly convincing evidence that Chapter 320 is preempted by ERISA," where there was significant evidence that the City's health insurance, pension, and apprenticeship mandates impermissibly relate to ERISA plans; and are thus preempted. See *Rack & Ballauer Excavating Co., Inc. v. City of Cincinnati*, 1:13-CV-30, 2013 WL 503129, *4-5 (S.D. Ohio Feb. 8, 2013).

30. Upon information and belief, R&B allowed its workforce to become unionized after it was denied its requested Temporary Restraining Order. Its action was thereafter dismissed by the Court.

31. It is clear to Plaintiffs, based upon recently announced contracts and bids awarded pursuant to the City's unlawful requirements at issue herein, that the City is now applying these requirements to all bidders, and such requirements are no longer suspended.

## THE RECENT PROJECTS

32. The initial project to which the City applied the Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) as they are currently written was the Donjoy/Belleview/etc. Water Main project "Donjoy Project." This project's approximate value is $1.3 million.

33. Public bids were required to be submitted by April 15, 2014.

34. R&B submitted a bid for the Donjoy Project.

35. R&B was awarded the Donjoy Project since its new status as a participant in the union

8

apprenticeship program made its bid responsive to the unlawful Responsible Bidder requirements.

36. The next project to which the City applied the unlawful requirements was the Vernon/Maxwell/etc. Water Main Project ("Vernon Project"). This project's approximate value is $750,000.

37. Two open-shop ACI member companies, Prus Construction and Hartman & Smith, submitted bids on the Vernon Project and both were low bidders, with Prus Construction bidding $756,871.20 and Hartman & Smith bidding $813,000.

38. The third lowest bidder, Ford Development Corporation, a union contractor, bid $962,000, which is $205,128.80 higher than the lowest bid by an ACI member for the Vernon Project.

39. The City has notified ACI's member companies that they would not be awarded the Vernon Project because their bids were non-responsive, notwithstanding their lower bid prices.

40. The Construction Bid Document for the Vernon Project (attached as Exhibit B) provided that the Responsible Bidder Guidelines (CMC-320) are applicable to this project.

41. There are several pending projects to which the City applied the unlawful Responsible Bidder requirements with bids currently awaiting award. These projects total approximately $7,060,000.

42. The Mohawk/Renner/etc. Water Main Project ("Mohawk Project") has bids due on June 3, 2014. The Mohawk Project is worth approximately $1.3 million.

43. ACI's member companies are qualified, willing, and able to bid on the Mohawk Project.

44. Upon information and belief the City will apply the unlawful requirements to the bids

submitted for the Mohawk Project, and unless enjoined, ACI's members will continue to be deprived of the opportunity to fairly bid on the project.

45. The Ludlow/Jefferson/etc. Water Main Project ("Ludlow Project") has bids due on June 5, 2014. The Ludlow Project is worth approximately $2 million.

46. ACI's member companies are qualified, willing, and able to bid on the Ludlow Project.

47. Upon information and belief the City will apply the unlawful requirements to the bids submitted for the Ludlow Project, and unless enjoined, ACI's members will continue to be deprived of the opportunity to fairly bid on the project.

48. The requirements under CMC-320 are contractor-disqualifying requirements.

49. Some of ACI's member companies could not meet the Apprenticeship Requirements in CMC 320-5 for the projects at issue, as the only program available that meets these requirements is that of the Laborer's Union.

50. Upon information and belief, ACI's member company's bid was rejected and will continue to be rejected by the City solely on the basis that it could not meet the Apprenticeship Requirement in CMC 320-5.

51. The City is awarding contracts based on a contractor's ability to meet underlying metrics that are preempted by Federal law.

### COUNT I
### (CITY'S ORDINANCES ARE PREEMPTED)

52. All previous paragraphs and allegations are incorporated by reference as if fully set forth herein.

53. The Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) are preempted by Federal law under the Employee Retirement

Income Security Act ("ERISA") and interpose obstacles to the achievement of the discernible objectives set forth by the Federal legislators.

54. ERISA Section 3(1) defines an "employee welfare benefit plan" as: "Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants . . . (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, *apprenticeship or other training programs*, or day care centers, scholarship funds or prepaid legal services . . . ." 29 U.S.C. § 1002(1) (emphasis added).

55. ERISA's preemption section, 29 U.S.C. § 1144(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.

56. The City's Apprenticeship Requirements in CMC 320-5 relate to an employee benefit plan under ERISA because it requires that each bidder maintain or participate in an apprenticeship program that contains requirements that disqualify all apprenticeship programs other than those that are union sponsored. This impermissibly interferes with the terms and conditions of existing apprenticeship plans in which ACI members participate.

57. The City's Apprenticeship Requirements in CMC 320-5 impose new requirements on ACI members that are already part of a compliant ERISA apprenticeship program.

58. The City's Pre-Apprenticeship Training Fund in CMC 320-7 relates to an employee benefit plan under ERISA because it requires contractors to pay ten cents per hour per

11

worker into an MSDGC fund 701 for a pre-apprenticeship program, which is a separate fund to support the apprenticeship or training program.

59. The City's Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) relates to an employee benefit plan under ERISA because it imposes a reporting requirement, requiring that the bidder certify whether it provides, or contributes to, a health care plan for those employees working on the project and shall provide a copy of the health plan upon request. It further sets a mandate on such contribution by requiring that the contributions must be part of the employee's regular compensation. See *Utility Contractors Ass'n of New England v. City of Fall River,* 2011 U.S. Dist. LEXIS 114333, 2011 WL 4710875 (D.Mass. Oct. 4, 2011) and *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497 (2d Cir. 2014).

60. The City's Factors in Determination of Lowest and Best Bidder in CMC 320-3(k) relates to an employee benefit plan under ERISA because it imposes a reporting requirement, requiring that the bidder certify whether it contributes to an employee pension or retirement program, including, but not limited to, a 401K, a defined benefit plan, or similar plan, for its field employees working on the project and shall provide a copy of the plan upon request. It further sets a mandate on such contribution by requiring that the contributions must be part of the employee's regular compensation. See *Utility Contractors Ass'n of New England v. City of Fall River,* 2011 U.S. Dist. LEXIS 114333, 2011 WL 4710875 (D.Mass. Oct. 4, 2011) and *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497 (2d Cir. 2014).

61. The Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-

3(j) and CMC 320-3(k) are preempted by ERISA, which is so pervasive that it occupies the field.

## COUNT II
## (DECLARATORY JUDGMENT)

62. All previous paragraphs and allegations are incorporated by reference as if fully set forth herein.

63. The Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) are preempted by ERISA.

64. Plaintiff is entitled to injunctive relief restraining the City from utilizing preempted criteria in awarding public projects financed by State and Federal funds, which criteria were instrumental in disqualifying ACI's member company's bid.

## COUNT III
## (PRELIMINARY AND PERMANENT INJUNCTION)

65. All previous paragraphs and allegations are incorporated by reference as if fully set forth herein.

66. Plaintiff is without a remedy with respect to the unlawful award of the Vernon Project to a bidder that is not the lowest and best bidder.

67. The City must be enjoined from awarding Projects based upon the City's unlawful and preempted criteria and Ordered to award the Projects to ACI's member company, the lowest and best bidder or alternatively to re-bid the Projects using lawful criteria that do not run afoul of Federal law.

68. The Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) are preempted by ERISA, and despite having the lowest and best

bidder, ACI's member company will be permanently deprived of its rights under the Projects unless the relief requested herein is granted.

69. The City must be ordered to bid public projects in accordance with State and Federal law.

70. Granting declaratory and injunctive relief as requested by Plaintiff will not harm the City, but instead the public interest would be served by granting declaratory and injunctive relief because the actions of the City in awarding public contracts pursuant to unlawful policies and procedures have placed the integrity of the public bidding process in jeopardy. Preserving the public's faith in the competitive bidding process is essential to fair competition and to obtaining the lowest price from qualified contractors on taxpayer-financed public projects, is a public interest.

71. ACI is entitled to declaratory and injunctive relief requested in order to restrain and prevent the City from proceeding with the award of the Mohawk and Ludlow Projects.

72. ACI is entitled to declaratory and injunctive relief declaring the Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) are preempted by ERISA and enjoining the City from enforcing the same.

73. ACI and its members will be immediately and irreparably harmed in the absence of judicial relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, ACI pray that the Court:

A. Declare that the Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) are preempted by

Federal law;

B. Temporarily restrain the City from enforcing the Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) in connection with the pending Mohawk Project, Ludlow Project, and pending or future waterworks construction projects for which contracts have not been awarded;

C. Preliminarily and permanently enjoin the City from enforcing the Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k);

D. Order that the City abide by State and Federal procurement laws for Projects that are financed by State or Federal funds;

E. Award ACI the costs of this suit;

F. Award ACI reasonable attorney fees; and

G. Award ACI any other relief that this Court deems proper.

Respectfully Submitted,

*/s/ Kevin R. McDermott*
Kevin R. McDermott (0019256)
Barnes & Thornburg LLP
41 South High Street, Suite 3300
Columbus, Ohio  43215
(614) 628-0096
(614) 628-1433 (facsimile)
kmcdermott@btlaw.com

*Trial Attorney for Plaintiff*

# VERIFICATION OF TERRY PHILLIPS

STATE OF OHIO
COUNTY OF HAMILTON, SS:

Terry Phillips, being first duly sworn, deposes and says as follows:

1. I am the Executive Director of Allied Construction Industries.

2. I have read the foregoing Verified Complaint for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction. The contents of the Complaint are true to the best of my knowledge and belief.

_____
Terry Phillips

Sworn to before me and subscribed in my presence this 30 day of May, 2014.

_____
Notary Public

Christie A. Cline-Farrow
Notary Public, State of Ohio
My Commission Expires 04-11-2018

17