IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ALLIED CONSTRUCTION INDUSTRIES, | : | CASE NO. 1:14-CV-00450 |
| | : | J. BARRETT |
| PLAINTIFF | : | DEFENDANT'S RESPONSE TO |
| V. | : | PLAINTIFF'S MOTION FOR A |
| | : | TEMPORARY RESTRAINING |
| CITY OF CINCINNATI, | : | ORDER |
| | : | |
| DEFENDANT. | : | |
| | : | |

## I.    Introduction

The City of Cincinnati ("the City") opposes the Plaintiff's request for a temporary restraining order and any request for an injunction.  The Plaintiff, Allied Construction Industries ("ACI"), is a trade association that represents construction companies in the Greater Cincinnati area. The City is a home rule Ohio city with its own public contracting law that has been expressly approved by the Ohio Supreme Court.  *See Cleveland Constr. v. City of Cincinnati,* 888 N.E.2d 1068 (Ohio 2008).

ACI seeks an order enjoining the City from enforcing provisions of its Responsible Bidder Ordinance ("RBO") and to restrain the application of the City's contracting law for public projects. ACI seeks this relief in order to unfairly improve its members' chances of becoming successful bidders on public works projects in the City related to sewer and water services.  This is to the detriment of the City and the taxpayers who benefit when bidders meet a higher standard of conduct, including taking responsibility for the training of a future skilled workforce that ACI members are not willing to do.

ACI brings suit one year after the City enacted its current RBO, complaining that the City's law is preempted by the Employee Retirement Income Security Act ("ERISA").  Even if ACI were correct on the law, which it is not, it is too late to win any form of emergency relief.

Under established United States Supreme Court and Sixth Circuit precedent, the Plaintiff has no likelihood of success on the merits.  There is no conflict between the City's law and federal law. Further, there is no irreparable harm.  A restraining order or injunction would upset the status quo and harm the public because more qualified contractors who meet the City's standards are the best bidders under the City's RBO.

While ACI claims that provisions of the City's RBO are preempted by ERISA, this argument misconstrues and ignores well-accepted jurisprudence on ERISA preemption.  ACI's preemption argument also distracts from the City's established and fundamental right to adopt a "lowest and best bidder" standard that vests discretion in the City to select not just the lowest but also the best bidder on public contracts.

The Court should deny the request for a restraining order.

**II.**    **Facts**

    **A.**    **The City's Responsible Bidder Ordinance.**

The City's Responsible Bidder Ordinance ("RBO"), CMC Chapter 320, was enacted in 2012 and amended to its current version in May 2013.[1]  The RBO is codified in Cincinnati Municipal

---

[1] The earlier version of the RBO was the subject of litigation, including an ERISA preemption challenge, in *Rack & Ballauer Excavating Co., Inc. vs. City of Cincinnati, et al.,* Case No. 1:13-cv-30.  During the course of that case the original RBO was amended.  In his Order granting the City's Motion to Dismiss, Judge Black noted that "[t]he enacted revisions to [the RBO] render Plaintiffs' allegations of harm moot."  (Case No. 1:13-cv-30, Doc. #9, Order Granting Defendants' Motion to Dismiss, July 1, 2013.)  Hamilton County has recently conceded this issue as well in its Petition to Enjoin Violation of the Consent Decree in *United States of America vs. Board of Cty Commrs.*, Case No. 1:02-cv-00107, Doc. #70, p.22)("Through its amendments [to CMC 320-3], the City [has cured] the [ERISA] concerns expressed by the court in *Rack & Ballauer Excavating Co.*")

2

Code Chapter 320 and applies only to Cincinnati Water Works ("CWW") and Metropolitan Sewer District ("MSD")[2] contracts that are over $400,000 in value.

There are three RBO provisions that ACI challenges:

1.    Apprenticeship Requirements (CMC 320-5),

2.    Pre-Apprenticeship Training Fund (CMC 320-7), and

3.    Factors in Determination of Lowest and Best Bidder – specifically the requirement that bidders must disclose whether they provide health care and retirement benefits to their employees (CMC 320-3(j) and (k)).

ACI contends that these provisions are preempted by ERISA.

When the City enacted the RBO and specifically, the provisions from which ACI seeks relief, it recognized the need to "ensure that the work performed on behalf of [CWW and MSD] is performed by skilled contractors and workers that share the City's commitment to safety, quality, time and budgetary concerns."[3] It also recognized that "there is a projected shortfall of trained workers for work to be performed on behalf of [MSD and CWW]" for years to come. *Id.*  The City Council explicitly understood "that the highest levels of safety and quality of work are maintained by ensuring that all contractors participate in industry-recognized training with a proven record of success." *Id.*

As a result of these legislative findings, the RBO was enacted and modified by council for the purpose of identifying the lowest and best bidder; to ensure that the City uses public funds responsibly by hiring skilled workers on CWW and MSD public works contracts; and, to meet the anticipated need for such workers into the future.  In contrast to these goals, ACI essentially contends that the RBO is unfair and that its members who cannot or will not comply with the RBO "cannot compete on an equal footing." It is the City's responsibility to act in the best interests of its ratepayers, not ACI, in determining what constitutes the "lowest and *best*" bid.

---

[2] ACI's Motion for Temporary Restraining Order challenges only the award of CWW, not MSD, contracts under the RBO.

[3] Exhibit A, Ordinance No. 114-2013.

**B.**      **The RBO Provisions Under Challenge.**

Following is a summary of the City RBO provisions that ACI challenges:

**CMC 320-5** (the "Apprenticeship Requirement") requires bidders to participate in an apprenticeship program for the primary apprenticeable occupation for the project which has graduated at least one apprentice from the apprenticeship program for each of the past 5 years.  The type of apprenticeship program is not specified or mandated by CMC 320-5.  As well, the Apprenticeship Requirement is not applicable to registered small business enterprises for contracts under $250,000 or any contract less than $400,000. *Id.*

**CMC 320-7** (the "Pre-Apprenticeship Training Fund") requires contractors on CWW and MSD projects to pay $.10 per hour per worker to a pre-apprenticeship training fund.  These funds are placed into separate accounts by CWW and MSD, and administered to fund qualified pre-apprenticeship programs that will create future apprenticeship opportunities for workers.  *Id.*

**CMC 320-3(j) and 320-3(k)** require bidders on CWW and MSD projects to certify whether or not they provide a health care plan and a retirement program to their employees.  A bidder's disclosure of these and other factors bearing on the bidder's responsibility are used by the City to determine whether a bidder is the "lowest and *best*" bidder on a contract.  *Id.*

The complained-of RBO requirements do not apply to every City project.  They apply only to projects undertaken by CWW and MSD, a sliver of the City's annual public works.  CMC 320-1-C1.  The requirements do not apply to CWW and MSD contracts under $400,000.  *Id.*

The health care and retirement sections are even narrower in application.  Only businesses with more than $2 million in gross revenues for any of the prior three years must comply.  CMC 320-3(j), (k).

**C.**      **ERISA Overview.**

ACI contends that ERISA preempts provisions of the City's RBO.

4

ERISA, the Employee Retirement Income Security Act, is a federal law that regulates employee welfare benefit plans. 29 U.S.C. § 1002(l). ERISA was enacted to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

Employee Benefit Plans ("EBP") may include health insurance, short term disability, long term disability, apprenticeship training, day care, prepaid legal services, vacation and other benefits. 29 U.S.C. § 1002(1). However, the mere labeling of an employee benefit does not automatically qualify it as an EBP under ERISA. Rather, an EBP exists under ERISA only if it is a plan, fund or program that is maintained or established by an employer and/or an employee organization for purposes of providing a specific benefit to an employee or beneficiary. 29 U.S.C. § 1003(a); *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 481 (6th Cir. 2007). That is, it must be a specific program funded from a separate fund, rather than general assets, to constitute an EBP.

The principal objective of ERISA is to protect EBP's from lax oversight. *Boggs v. Boggs*, 520 U.S. 833, 845 (1997). The Supreme Court explained in *California Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316 (1997) that:

> In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employee benefits from accumulated funds. To that end, it established extensive reporting, disclosure and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator.

*Id.* At 326-327. ERISA recognizes the balance between ensuring that employees have a fair and efficient means to enforce their rights under an EBP and the encouragement of the creation of such plans. *Langley*, 899 F. Supp.2d at 693, citing to *Aetna Health Inc. v. Davila*, 452 U.S. 200, 208 (2004). In sum, ERISA was devised by Congress to protect employees' benefits and provide a uniform regulatory scheme by which such benefit plans could be regulated at the federal level.

5

ERISA contains a preemption provision. It preempts any state or local law that "relates to" an ERISA EBP. 29 U.S.C. § 1144(a). The legislative intent behind ERISA's preemption clause "was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645, 656-657 (1995). Despite the seemingly infinite potential for a state law to "relate to" ERISA, preemption challenges are granted very sparingly by the Supreme Court, Sixth Circuit and other federal circuit courts.

**III.** **Law and Argument**

    **A.** **Standard for an Injunction**

The court applies a balancing test to determine the merits of the requested injunction. In this case, ACI fails on all four elements of the test.

In determining whether a temporary restraining order or preliminary injunction is proper, a district court considers: (1) the likelihood of success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. *Miller v. Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010).

Parties seeking an injunction bear a "heavy burden" to prove entitlement to equitable relief, and, although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Further, the plaintiff must prove its entitlement by "clear and convincing evidence." *NECA-IBEW Pension Fund v. Cox*, 2011 U.S. Dist. LEXIS 109064 (S.D. Ohio Sept. 26, 2011). ACI fails to meet its burden.

    **B. No Likelihood of Success on the Merits**

To obtain a preliminary injunction, Plaintiff must show that the movant will likely succeed on the merits of the action. In this case, Plaintiff will not succeed. ACI's sole argument on the merits is that ERISA preempts the City's RBO ordinance.

ACI claims that the City's RBO provisions (relating to apprenticeship, health care, retirement, and pre-apprenticeship training programs) are preempted by ERISA under 29 U.S.C. § 1144(a). However, the City is not seeking to alter, modify or enforce a contractor's provision of benefits. But rather, ACI's challenge is in the context of competitive bidding, where the City, a charter city with constitutionally based broad powers (Ohio Constitution, Art. XVIII, Sect 7), has elected to create a modest responsible bidder ordinance for its proprietary water projects to address a skilled labor shortage, which under its charter, it may do. (Article II, Section 1, Charter of the City of Cincinnati).

### 1.    The Presumption Against ERISA Preemption.

On its face, ERISA broadly preempts "any and all State Laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, ERISA jurisprudence has developed over the past 20 years to narrowly construe its preemption provision. In applying ERISA preemption to State regulatory acts, the Supreme Court has instructed that the analysis begin with a presumption *in favor of* the State's Act:

> "[W]here federal law is said to bar state action in fields of traditional state regulation...we have worked on the assumption that the historic police powers of the States were not to be superceded by the Federal Act unless that was the clear and manifest purpose of Congress." *Travelers*, 514 U.S. at 655 (internal quote marks omitted, parentheticals and ellipses in original). *See also Dillingham,* 519 U.S. at 325.

Persons who challenge such a State regulation "bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806, 814 (1997)(internal quotation marks omitted).

Since the mid-1990's the Supreme Court has moved toward a "presumption against preemption" and returned to an emphasis on the main purpose of ERISA – i.e., to ensure that oversight of EBP's would be subject to a uniform body of benefits law and to minimize employers' burden of complying with conflicting state and federal laws.  *See Assoc. Builders & Contrs. v. Mich. Dep't of Labor & Econ. Growth*, 543 F.3d 275, 279 (6th Cir. 2008) (explaining the Supreme Court's ERISA preemption jurisprudence under *New York State Conference of Blue Cross & Blue Shield v. Travelers Insurance Co.,* 514 U.S. 645 (1995), *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316 (1997), and *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997)).

The Supreme Court's concerted efforts to reign in the possibilities for ERISA preemption are applicable here.  In *Travelers,* the Court found that if the "relate to" preemption provision were allowed to reach to its most logical extension, "pre-emption would never run its course." 514 U.S. 645, 655 (1995). Similarly, in *Dillingham*, the Court noted that "applying the 'relate to' [preemption] provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." 519 U.S. 316, 335 (1997) (Scalia, J. concurring).

In *Assoc. Builders & Contrs.*, the state of Michigan sought to dissolve a 1992 injunction against two state laws that required a one-to-one electrician-to-apprentice ratio and certification of apprentice programs consistent with U.S. Department of Labor standards.  543 F.3d at 277.  The Sixth Circuit granted Michigan's request noting that "there has been a change in law," specifically, the narrowing application of ERISA preemption set forth by the Supreme Court in the *Travelers*, *Dillingham*, and *De Buono* cases.  *Id.* at 278.

ACI claims that CMC 320-5, 320-7, 320-3(j) and 320-3(k) "relate to" an ERISA EBP and are, therefore, preempted by ERISA.  ACI's starting premise is that ERISA preemption law is

"conspicuous in its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990).  However, ACI's

reliance on *FMC Corp.* undermines twenty years of Supreme Court and Sixth Circuit jurisprudence,

*supra*, that has substantially narrowed the preemptive scope of ERISA since 1990.

> **2. The City's Responsible Bidder Ordinance Does Not "Relate To" ERISA Regulated Employee Benefit Plans, and Therefore Is Not Preempted Under Sixth Circuit and Supreme Court Precedents.**

Courts now must start with a presumption against preemption and use the following analysis

to determine if the presumption can be overcome.  A state law impermissibly "relates to" an ERISA

EBP and is preempted by 29 U.S.C. § 1144(a) if either (1) it makes "reference to" ERISA plans; or

(2) if there is a "connection with" ERISA plans.  *Assoc. Builders & Contrs.* 543 F.3d at 280;

*Dillingham,* 519 U.S. at 324.  Under Supreme Court and Sixth Circuit authority, the City's RBO

ordinances do not "relate to" any ERISA-regulated EBP.

In reaching its decision in *Assoc. Builders & Contrs.,* the Sixth Circuit provided binding

guidance on the meaning of the "relate to" test.  The Court relied heavily on the Supreme Court's

decision in *Dillingham*, 519 U.S. 316, which upheld the apprenticeship provisions of California's

public works prevailing wage law from ERISA preemption:

> 'This is another Employee Retirement Income Security Act of 1974 (ERISA) preemption case' [quoting *De Buono*], one that asks whether ERISA preempts two provisions of a Michigan law governing the training of apprentice electricians.  Because the 'substantive standards to be applied to apprenticeship training programs are quite remote from the areas with which ERISA is expressly concerned,' and because of the paucity of indication in ERISA and its legislative history of any intent on the part of Congress to pre-empt state apprenticeship training standards,' [quoting *Dillingham*], we hold that ERISA does not preempt the provisions." (Internal citations omitted).  *Assoc. Builders & Contrs.*, 453 F.3d at 277.

The City ordinances at issue here are at least as remote from ERISA's regulatory scheme as

the statutory apprenticeship requirements upheld in *Assoc. Builders & Contrs.* and the California

public works apprenticeship and prevailing wage laws sustained in *Dillingham.*

ACI has failed to identify a single existing EBP that is impacted by the RBO or with which the RBO conflicts.  Nor could it, as the City's law does not mandate, regulate, alter or otherwise impact ACI members' ERISA plans or administration thereof.  The City remains more than content to allow the federal government to regulate employee benefit plans.  Rather, its enactment of the RBO merely sets forth criteria by which the City asserts its right to secure the "lowest and best" bidder for its CWW and MSD projects.

Finally, The Pre-Apprenticeship Training Fund established by CMC 320-7 is not a state law that "relates to" an EBP because, *inter alia*, it is not an ERISA-regulated plan.  Rather, it is established and maintained by the City for purposes set by the City.[4]  The other RBO provisions that are at issue do not "relate to" an ERISA EBP for the reasons set forth below.

### a.  The RBO Does Not "Refer to" an ERISA EBP.

ERISA preemption applies if, in the state law in question, there is a "reference to" an ERISA plan. To determine this, the test is whether the state law acts immediately and exclusively upon ERISA plans.  *Dillingham*, 519 U.S. at 324.

As to the "reference to" branch of the analysis, the Sixth Circuit noted that the Supreme Court had found the California statute did not "refer to" an ERISA plan because the law "applied equally to training programs funded by a separate ERISA fund and those funded out of an employer's general assets." *Id*.  In other words, the law applied to apprenticeship programs that were not ERISA plans (those funded from general assets) as well as to programs that were ERISA plans, and so could not have "reference to" ERISA plans.

In *Assoc. Builders & Contrs.*, because the Michigan law under challenge did not apply exclusively to apprenticeship plans regulated by ERISA, the Sixth Circuit concluded that it did not have the requisite "reference to" ERISA plans in order for ERISA preemption to apply. "The rules

---

[4] See 29 U.S.C. § 1003(a): an ERISA-regulated plan is one that "is established or maintained –(1) by an employer… (2) by any employee organization…; or (3) by both."

do not 'act[] immediately and exclusively upon ERISA plans', and thus do not depend on the existence of ERISA plans [for their] … operation.'" *Id*. at 281, *quoting Dillingham*, 519 U.S. at 325. See also *Minn. Chapter of Assoc. Builders & Contrs. v. Minn. Dep't. of Labor & Indus.*, 47 F.3d 975, 977 (8th Cir. 1995)(prevailing wage law that "refers to" benefits generally but not to a specific ERISA employee benefit plan is not expressly preempted by ERISA); *Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital, Inc.* 947 F.2d 1341, 1344 (8th Cir. 1991)(a state law that does change or negate the relationship between ERISA plan beneficiaries and the structure of such plans is not preempted by ERISA); and *Keystone Chapter Associated Builders and Contrs., Inc. v. Foley*, 37 F.3d 945, 957 n.17 (3d Cir. 1994)(the listing of an ERISA benefit in Pennsylvania law as a factor in determining state prevailing wage is inconsequential).

Here, the City's RBO does not make reference to ERISA plans. And, to the extent that the City's RBO applies to ERISA plans at all, it does not apply exclusively to ERISA plans. It does not depend on the existence of ERISA plans for their operation. A contractor need not maintain an ERISA plan to meet the bid specifications set by the ordinances.

**b.      There Is No "Connection With" an ERISA EBP.**

There is an impermissible "connection with" an ERISA plan only if the law mandates (or effectively mandates) something, <u>and</u> that mandate is "within the area that Congress intended ERISA to control exclusively." *Id.* at 281. The law must mandate an ERISA "employee benefit structure or [its] administration." *Id.* at 280 (citing *Dillingham*, 519 U.S. at 328-34). The City's RBO does not mandate any particular employee benefits structure or administration. And, ACI does not identify any member whose particular employee benefits structure or administration is mandated by the RBO.

*Sherfel v. Gassman*, 899 F.Supp.2d 676 (S.D.Ohio, 2012) is a recent case that illustrates the "connection with" test under ERISA. In *Sherfel,* Nationwide Insurance Company provided Short

Term Disability ("STD") to its employees.  When one employee disagreed with the scope of her STD benefits, she filed an administrative complaint with the State of Wisconsin under the Wisconsin Family Medical Leave Act ("WFMLA").  Under the WFMLA, Nationwide was required to provide the employee with the contested STD benefits.  Because the employee could have sought relief with an ERISA enforcement action under 29 U.S.C. § 1132(a)(1)(B) and because the WFMLA mandated an ERISA benefit, the court held that Wisconsin law had an improper "connection with" an ERISA plan and was preempted.

In reaching its conclusion, the court noted that Nationwide had over 32,000 employees in 49 states, and that the WMFL was preempted by ERISA because it bound Nationwide and its benefits plan administrator to particular choices at a state level, and precluded its uniform administration of its STD benefits plan.   The court held that "[t]he Wisconsin administrative scheme thus runs counter to the purpose of ERISA to 'induce employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct[.]'" *Id.* at 701. (Internal Citations excluded).

The state law challenged in *Sherfel* provides a strong analysis of the "connection with" test, as well as a stark example of what Congress intended ERISA to preempt.  Applying the same "connection with" an ERISA plan analysis to the City's RBO, it is clear that ERISA preemption does not apply.  Unlike *Sherfel,* the RBO does not mandate an EBP[5], change ACI members' existing EBP's.  To the contrary, there is no mandate because ACI members can choose "not to work on [city] public-works projects" related to CWW and MSD.  *Assoc. Builders & Contrs.,* 543 F.3d 280.  Unlike the Wisconsin law, the City's law does not have uniform application to all employers in the City. Rather, it only applies to those contractors doing business directly with the City on water and sewer projects for contracts in excess of $400,000 in value.  The City's RBO

---

[5] The required apprenticeship program under CMC 320-5 need not be an ERISA EBP.  The health and retirement disclosures under 320-3(j) and (k) do not require the provision of health or pension EBP's.

does not require ACI members to use a particular employee benefit structure or administration. *Id.* Indeed, the ordinance here is narrower than those considered in *Assoc. Builders & Contrs.* and *Dillingham*, because it is limited to only one category of City construction projects, those for CWW and MSD public improvement projects, and it provides generous exemptions for many businesses.

The inquiry could end there. But even if the Court were to find that the law created a "mandate," that mandate is not within the area that Congress intended ERISA to preempt. As the Sixth Circuit explained, apprenticeship requirements are not preempted because they: (1) are within the traditional "police powers" of state and local government; (2) promote public safety and welfare, areas "quite remote" from ERISA concerns; and (3) treat ERISA and non-ERISA plans equally. Moreover, finding otherwise would prohibit state and local regulation of apprentice programs, which is far afield of ERISA's purpose. *Assoc. Builders & Contrs.*, *Id.* at 282-83.

Without providing any specifics, ACI does nothing more than broadly assert that the RBO "impermissibly interferes" with existing ACI members' apprenticeship plans and "mandates" disclosure regarding health care and retirement. This does not amount to ERISA preemption. ERISA no longer is read to preempt vast swaths of state and local regulations in these spheres. *See, e.g.*, *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 546 F.3d 639 (9th Cir. 2008), *cert. denied*, 130 S.Ct. 3497 (2010) (upholding a citywide universal health care system). Following Supreme Court and Sixth Circuit analysis, the City's law is not preempted.[6]

> **3. The City's Responsible Bidder Ordinance Is Not a "State Law", As Defined By ERISA, That Is Subject To Preemption. The City Adopted The Ordinance In Its Role As A Participant In The Market For Construction Services, Not As A Regulator.**

---

[6] ACI relies heavily on *Utility Contractors Ass'n. of New England v. City of Fall River*, 2011 U.S. Dist. LEXIS 11433, 2011 WL 4710875 (D.Mass. Oct. 4, 2011) and *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497 (2d Cir. 2014) for the proposition that the RBO is preempted by ERISA. These cases are not precedential and are also inconsistent with established Supreme Court and Sixth Circuit jurisprudence on ERISA.

ERISA preempts only "State laws insofar as they may now or hereafter relate to any employee benefit plan". 29 U.S.C. § 1144(a). The Supreme Court has noted that the legislative purpose of this preemptive provision was to "establish the *regulation* of employee welfare benefit *plans* as exclusively a federal concern." *Travelers*, 514 U.S. at 655 (emphasis added). This intent is reflected in the definitions of "State law" and "State" set forth 29 U.S.C. § 1144(c):

"(1) The term 'State law' includes all laws, decisions, rules, regulations, or other State action *having the effect of law*, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

"(2) The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which *purports to regulate*, directly or indirectly, the terms and conditions of employee benefit *plans* covered by this subchapter." (Emphasis added).

But, the United States Supreme Court expressly recognizes "a distinction between government as regulator and government as proprietor.*" Building & Construction Trades Council v. Associated Builders & Contractors of Massachusetts / R.I,* 507 U.S. 218, 227 (1993)("*Boston Harbor*"). While certain regulatory action by a State may be properly preempted by federal law, action by a State as a market participant, a purchaser of goods and services in the marketplace, is generally not subject to federal preemption. *Id. Concur Michigan Building & Construction Trades Council v. Snyder*, 729 F.3d 572 (6th Cir. 2013)("*Snyder*"). In this case, the City of Cincinnati is not regulating employee benefits or mandating an apprenticeship program, rather, it is contracting for construction projects. This is precisely the type of market participation that is expressly excluded from the definition of state regulatory acts preempted by federal law.

*Boston Harbor* involved a bid requirement set by a public entity (Massachusetts Water Resources Authority) for contractors and subcontractors bidding for work on its public works project. *See* 507 U.S. at 220-222.

A contractors association sued to block enforcement of the bid specification requiring a project labor agreement ("PLA") on grounds that it was preempted by the National Labor Relations

Act (NLRA), 29 U.S.C. § 151, *et seq*.  The Supreme Court ruled that the PLA bid specification was not preempted by the NLRA because the public entity set the specification in its role as a market participant and not as a government regulator.  In the words of the Court:  "When a State owns and manages property, for example, it must interact with private participants in the marketplace.  In doing so, the State is not subject to preemption by the NLRA, *because preemption doctrines apply only to state regulation*."  507 U.S. at 227 (emphasis added).

> "To the extent that a private purchaser may choose a contractor based upon that contractor's willingness to enter into a pre-hire agreement, a public entity as purchaser should be permitted to do the same.  Confronted with such a purchaser, those contractors who do not normally enter into such agreements are faced with a choice.  They may alter their usual mode of operation to secure the business opportunity at hand, or seek business from purchasers whose perceived needs do not include a project labor agreement.  In the absence of any express or implied indication by Congress that a State may not manage its own property when it pursues its purely proprietary interests, and where analogous private conduct would be permitted, this Court will not infer such restriction."  *Id*. at 232.

Like the PLA bid specification set by the public entity in *Boston Harbor*, the City's RBO sets terms and conditions under which the City will contract for construction services on public projects by CWW and the MSD; that is, as a market participant.  The City set contractual terms and conditions that could be set by the owner of a private project.  The RBO is not a regulatory act applicable to all contractors.  Rather, the City's RBO sets contractual terms and conditions that apply only to contractors that bid on the City's public CWW and MSD projects for its water and sewer infrastructures.  To paraphrase the Supreme Court in *Boston Harbor*, a contractor that does not wish to meet the bid specifications may simply choose not to bid on the projects to which the specifications apply, just as a contractor may choose not to bid on private projects if it does not wish to comply with the terms of the bid specifications.

In *Snyder*, 729 F.3d 572, the Sixth Circuit[7] embraced and applied the *Boston Harbor* distinction between government as regulator and government as market participant / proprietor.  It ruled that a Michigan statute prohibiting governmental units in the State from entering into labor agreements on public works projects was not preempted by the NLRA.  The Circuit found that the statute was adopted in the State's role as a proprietor rather than its role as a regulator.

> The limits of the act demonstrate its proprietary nature.  The act affects only the actions of the state and political subdivisions of the state.  It has no effect on private projects.  *Id*. at 578.

Even more so in this instance, the City's RBO does not serve as a broad regulatory mechanism that governs bidding for all projects.  Rather, it was enacted in the City's proprietary capacity and oversight authority to ensure that improvements to its sewer and water public works projects were undertaken in a responsible manner.  It does not apply to the City's other non-MSD and non-CWW projects, nor does it apply to or regulate the private sector.

The City's enactment of the RBO and setting forth conditions for bids falls squarely within the market participant doctrine. There is no indication that Congress intended to prevent the City from managing its own property and setting the terms and conditions under which it will purchase and contract for construction services.  Rather, as opined by the Supreme Court and supported by the text of ERISA, Congress intended to restrict only governmental regulatory actions, not a public entity's freedom of contract in the marketplace.

---

[7] Other Federal Circuit and District Courts have similarly shielded contract specifications from federal preemption when they applied narrowly to a state or local government's public works and were designed to insure improved performance. *See Associated General Contractors of America v. Metropolitan Water District of Southern California*, 159 F.3d 1178, 1183 (9th Cir. 1998) (requirement that contractors on project adhere to a particular collective bargaining agreement that included benefit package was not preempted by ERISA); *Colfax v. Illinois State Toll Highway Authority*, 79 F.3d 631, 634-35 (7th Cir. 1996) (requirement that contractor adhere to area collective bargaining agreement was not preempted by NLRA); *Minnesota Chapter of Associated Builders and Contractors, Inc. v. County of St. Louis*, 825 F. Supp. 238, 243-44 (D. Minn. 1993) (county's requirement that bidders for jail construction contract agree to labor agreement that set benefit levels but also contained non-strike clause not preempted by ERISA).

In sum, the City's RBO is not preempted by ERISA because the RBO is not a "State law" regulating employee benefit plans within the meaning of the law.

**4. The City's RBO Is a Proper Exercise of Its Municipal Authority under its Charter, the Ohio Constitution and other Ohio Law.**

The RBO is a lawful exercise of the City's authority.  Article XVIII, section 3 of the Ohio Constitution empowers municipalities "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The right of the City -- or any public entity whether or not a charter city-- to set criteria by which to determine what is a "lowest and best" bidder on city contract has been well-established since at least 1905.  *Scott v. City of Hamilton*, 19 Ohio C.D. 652, 655 (Ohio Cir. Ct. Apr. 1905). That authority has been reaffirmed by state court decision, including the Ohio Supreme Court, which has confirmed the propriety of a public owner's use of selection criteria in awarding its contracts.  *See State ex Rel. Associated Builders & Contractors of Ohio v. Franklin Cty. Bd. of Commn.*, 926 N.E.2d 600, 606 (Ohio 2010).

The City is a home rule Ohio city with its own public contracting law that has been expressly approved by the Ohio Supreme Court.  *See Cleveland Constr. v. City of Cincinnati,* 888 N.E.2d 1068 (Ohio 2008).  CMC 320-3 provides that the City will consider the factors, including a bidder's provision of health care and retirement benefits to its employees, in determining the lowest and best bid for CWW and MSD contracts. "When the statute provides for the acceptance of the *lowest and best* bid the city is not limited to an acceptance of merely the lowest dollar bid." *Cedar Bay Construction Inc. v. City of Fremont*, 552 N.E.2d 202, 204 (Ohio 1990).  The law gives the City, as a contracting entity, broad discretion to adopt policies and award projects.

**5. The Ordinances Are Saved From ERISA Preemption Because They Implement Another Federal Law, The National Apprenticeship Act.**

By its own terms, ERISA limits preemption by providing that:

Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in [29 U.S.C. §§ 1031, 1137(b)]) or any rule or regulation issued under any such law.  29 U.S.C. § 1441(d).

In *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85 (1983) the Supreme Court ruled that ERISA could not preempt a New York human rights law because to do so would impair the federal enforcement scheme regarding fair employment laws.

Similarly, preemption of the City ordinances would frustrate and impair the federal-state scheme long envisioned by Congress for the regulation of apprenticeship under the National Apprenticeship Act of 1937 ("Fitzgerald Act"), 29 U.S.C. § 50.  As the Sixth Circuit observed in *Assoc. Builders & Contrs.*, state apprenticeship standards are not preempted by ERISA:

In authorizing the Secretary of Labor to 'cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship' and 'to promote the furtherance of labor standards necessary to safeguard the welfare of apprentices,' 29 U.S.C. § 50, the Fitzgerald Act also undermines any suggestion that Congress sees no role for the States in regulating apprenticeship safety.

543 F.3d at 283.  *See also Dillingham,* 519 U.S. at 319-320; *Joint Apprenticeship and Training Council v. New York State Department of Labor*, 984 F.2d 589 (2d Cir. 1993)("*New York*").

Here, the City ordinances advance the Fitzgerald Act's purpose to encourage responsible apprenticeship by addressing the lack of a skilled labor force, and to create benefits such as increased career opportunities for workers, financed not by the City, but by the contractors which it pays to undertake public improvement projects with taxpayer money.

**C.      No Harm to ACI or its Members**.

ACI contends that its members will suffer harm without this Court's grant of a TRO.  They claim that the RBO provisions "premature[ly] eliminate them from the bidding process."  (Doc. #2, Plaintiff's Motion for a Temporary Restraining Order, p.13.)  This claim is specious.  ACI members have ample opportunity to bid on City projects without complying with the RBO.  First, the RBO

does not apply to the City's other contracts, only those for MSD and CWW. And even for MSD and CWW contracts, the RBO does not apply to those under $400,000. CMC 321-1-C1.

There is nothing that precludes ACI members from providing health care or retirement benefits in order to improve its chance of being chosen as a bidder. Likewise, ACI members who do not currently participate in apprenticeship programs can still successfully bid on current and future CWW projects. They must simply contract with an apprenticeship program that is compliant with CMC 320-5 prior to executing the contract with the City.

**D.      Third Parties will be harmed by a TRO.**

The bid date for 8 pending CWW and MSD projects has passed. It is only by agreement of the parties that the City has agreed to not award a contract for those projects pending further order of this Court. Agreed Order, Doc. #7, June 3, 2014.

If this Court grants ACI's request for injunctive relief, the Court order will effectively delay completion of vital public infrastructure projects. This will cause harm to the City, its residents, and bidding contractors who are the "lowest and best" bidder under existing RBO requirements.

**E.      The public interest is not served by an injunction.**

The public interest in the City's responsible bidder law is set forth in the legislative findings in Ordinance No. 114-2013. Exhibit A. The Ordinance, enacted pursuant to the City's legislative power, states that Chapter 320 is established to "ensure that the work performed on behalf of [MSD and CWW] is performed by skilled contractors and workers that share the City's commitment to safety, quality, time and budgetary concerns[.]"

The public interest is expressed by City Council, which is making choices about how public funds are spent. The RBO furthers the goals of open, competitive bidding by setting specific reasonable requirements that bidders must meet in bidding on CWW and MSD contracts. The City,

not a trade organization whose disgruntled members might not meet the RBO standards, has the authority to determine the parameters under which it will award such contracts.

The Plaintiffs are asking the court to substitute their judgment of the public interest through judicial intervention.  This court should conclude that the public interest is best served by the City's current system of awarding CWW and MSD projects, rather than by having that process interrupted by legal process.  If the Plaintiffs ultimately prevail then their remedy should be limited to damages that may be allowed under state and federal law.

**IV.**    **Conclusion**

This case is not even close on the need for injunctive relief.  Chapter 320, the City's Responsible Bidder Ordinance, is not preempted by ERISA.   The RBO is not impermissibly "related to" ERISA.  It is not a regulatory "State Law" as defined by ERISA.  The City adopted the RBO in its role as a participant in the market for construction services, not as a regulator.  The City's RBO is a proper exercise of its municipal authority under its Charter, the Ohio Constitution and other Ohio Law.

Third parties will be harmed, public work delayed, and public policy thwarted by interrupted construction.  And there is no emergency here.  ACI waited until a year after the CMC Chapter 320, the RBO, was enacted, to challenge its bidding requirements.  On all four elements of equitable relief, ACI fails.

The City respectfully requests that the court deny the request for injunctive relief.

Respectfully submitted,


TERRANCE A. NESTOR (0065840)
Interim City Solicitor

**/s/ Jessica L. Powell**
Jessica L. Powell (0073928)
Assistant City Solicitor
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
Ph.     (513) 352-3945
Fax.    (513) 352-1515
E-mail:  jessica.powell@cincinnati-oh.gov
Trial Attorney for City


## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.


**/s/ Jessica L. Powell**
Jessica L. Powell (0073928)