# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO WESTERN DIVISION

| | | |
|---|---|---|
| Allied Construction Industries, | : | |
| | : | **Case No. 14-cv-450** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Judge Barrett** |
| | : | |
| City of Cincinnati, | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

### I.    Introduction

The City of Cincinnati (the "City"), through the enactment of its Responsible Bidder Ordinance ("RBO"),[1] is attempting to limit contractor participation by restricting the number of qualified bidders that can bid on its public waterworks projects, thus restricting the number of bids received on those projects. Plaintiff, Allied Construction Industries ("ACI"), is seeking to expand the participants, requesting that this Court allow qualified, willing, and able bidders, who have been awarded public projects by the City for the last 54 years, to participate in bidding for the City's public waterworks projects.

The City, by its enactment of the RBO, has stacked the deck in the bidding process by allowing only labor union bidders in, while keeping other bidders out. See Plaintiff's Verified Complaint, ¶49. Regardless of what the City claims was the purpose or intention behind the enactment of the RBO, the undeniable result is that on City waterworks projects, if a bidder is not a union employer, its bid will be considered non-responsive, and therefore, ineligible for

---

[1] The specific provisions at issue in this case, as set forth in greater detail in Plaintiff's Verified Complaint and Motion for Temporary Restraining Order, include the Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k).

consideration. The result of City waterworks projects that have been awarded thus far shows the City's true goals – to award bids to only union employers.

While the City suggests that it is too late for ACI to win any form of emergency relief because the City enacted its current RBO a year ago, the City just awarded its first waterworks project in May, 2014. As set forth in Plaintiff's Verified Complaint, there are several more waterworks projects that are yet to be awarded. See Plaintiff's Verified Complaint, ¶¶32-45. Furthermore, ACI waited to file suit until the RBO provisions were actually applied to its member companies' bids so that it would not face the justiciability issues that Rack & Ballauer Excavating Co., Inc. faced. See *Rack & Ballauer Excavating Co., Inc. v. City of Cincinnati*, 1:13-CV-30, 2013 WL 503129 (S.D. Ohio Feb. 8, 2013).

While the City attempts to disguise the effects of the RBO, reality must be acknowledged. There is no doubt that the discriminatory RBO provisions at issue are unlawful as they are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 *et seq*.

## II.  Law and Argument

### a.  The Supremacy Clause and Federal Preemption

The Supremacy Clause, Article Six, Clause 2 of the U.S. Constitution establishes the United States Constitution, federal statutes, and U.S. treaties are "the supreme law of the land". U.S. Const. art. VI, cl. 2. The purpose of the Supremacy Clause is "to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments as to exempt its own operations from their own influence." *Pub. Utilities Comm'n of State of Cal. v. United States*, 355 U.S. 534, 78 S. Ct. 446, 2 L. Ed. 2d 470 (1958).

The Supremacy Clause provides Congress with the power to preempt state law. *Norfolk &*

*W. Ry. Co. v. City of Oregon*, 149 F.3d 1184 (6th Cir. 1998). Federal preemption of state law occurs when Congress, in enacting a federal statute, "expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368-69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) (citations omitted). (See *Com. of Pa. v. Nelson*, 350 U.S. 497, 76 S. Ct. 477, 100 L. Ed. 640 (1956), "When Congress has taken the particular subject matter in hand, coincidence is as ineffective as opposition, and a state law is not to be declared a help because it attempts to go farther than Congress has seen fit to go," and "federal statutes 'touch a field in which the federal interest is so dominant that the federal system (must) be assumed to preclude enforcement of state laws on the same subject.") In order for a court to determine if a federal law preempts a state law, the court must determine whether Congress intended the statute to have such preemptive effect – that is, an intent that the federal regulation supersede state law. *Norfolk & W. Ry. Co. v. City of Oregon*, 149 F.3d 1184 (6th Cir. 1998) (citations omitted).

There are two ways that a federal law can preempt a state law: conflict preemption and complete preemption. *Puterbaugh v. AirTran Airways*, 494 F. Supp. 2d 597, 600-01 (S.D. Ohio 2003). Conflict preemption arises where compliance with both federal and state law is a physically impossible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 600-01, citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Silkwood v. Kerr–McGee Corp.*,

464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Complete preemption arises where Congress evidences intent to occupy a given field. *Id.* at 600-01, citing *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

ERISA contains express preemption language. *Tiffany v. Unum Life Ins. Co. of Am.*, 250 F.R.D. 314, 317 (W.D. Mich. 2008) citing 29 U.S.C. § 1144(a). Section 514 of ERISA, as amended, provides in pertinent part: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). The United States Supreme Court has applied complete preemption to ERISA. *Puterbaugh v. AirTran Airways*, 494 F. Supp. 2d 597, 601 (S.D. Ohio 2003) citing *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999).

b. **The 2013 Amendments to the Responsible Bidder Ordinance have not Cured the Defects.**

The City cites to the 2013 amendments in support of its argument that the legal defects have been cured. However, a close examination of the current RBO shows that a new set of legal defects have been implemented.

The amendments to the Apprenticeship Requirements in CMC 320-5 have actually made the ERISA defects <u>worse</u>. By connecting the primary apprenticeable occupation requirement with the new five-year graduation requirement, the City effectively mandates using only a union apprenticeship program. The primary trade on the waterworks projects is laborers, and the only laborer apprenticeship program which has operated for the last five years is the labor union

apprenticeship program. A state law has an impermissible 'connection with' an ERISA plan if it "directly regulates or effectively mandates some element of the structure or administration of employers' ERISA plans." *Associated Builders & Contractors v. Michigan Dep't of Labor & Econ. Growth*, 543 F.3d 275, 281 (6th Cir. 2008), citing *Retail Indus. Leaders Assoc. v. Fielder*, 475 F.3d 180, 192–93 (4th Cir.2007). Here, the City has effectively created a mandate, by enacting requirements that only the laborer's union can meet, and at the very least, the City has effectively mandated the participation in the labor union apprenticeship program. This is the exact type of intrusive requirement that was held to be preempted by ERISA in *Util. Contractors Ass'n of New England, Inc. v. City of Fall River*, CIV.A. 10-10994-RWZ, 2011 WL 4710875 (D. Mass. Oct. 4, 2011).

The City's amendments to the health care plan and retirement program provisions in CMC 320-3(j) and CMC 320-3(k) also do not cure the ERISA concerns. While the City amended the language from requiring bidders to "certify that they provides/contributes to…" to "certify whether they provide/contribute to…" even the City admits that these sections are still effectively mandates. The City's Response states "[a] bidder's disclosure of these and other factors bearing on the bidder's responsibility are used by the City to determine whether a bidder is the 'lowest and *best*' bidder on a contract," and "[t]here is nothing that precludes ACI members from providing health care or retirement benefits in order to improve its chance of being chosen as a bidder." See Defendant's Response, pp. 4, 19. The City admits that these are factors that are considered when awarding bids, and suggests that if a bidder does not provide or contribute to a health care plan or contribute to a retirement program, they will be penalized in the bid. This is the functional equivalent of the repealed mandate.

Even if these provisions were only reporting requirements, they would still be preempted

by ERISA, where ERISA is expressly concerned with reporting and disclosure. *Associated Builders & Contractors v. Michigan Dep't of Labor & Econ. Growth*, 543 F.3d 275, 283 (6th Cir. 2008) citing *California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.,* 519 U.S. 316, 330 (1997). See also *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497 (2d Cir. 2014), holding that ERISA preempted a state statute and regulation requiring that all health insurers file reports with the State containing claims data and other "information relating to health care." Furthermore, CMC 320-3(j) and (k) still include mandates on health care plans and retirement plans by requiring that such contributions to the health care plan or retirement program "must be a part of the employee's regular compensation." These provisions purport to dictate how such plans are paid for by the employer. These are mandates on employee benefit plans under ERISA. See *Associated Builders & Contractors v. Michigan Dep't of Labor & Econ. Growth*, 543 F.3d 275, 281 (6th Cir. 2008).

The City did not attempt to cure any ERISA defects with its amendment of the Pre-Apprenticeship Training Fund requirement in CMC 320-7. In fact, the City added substantially to this requirement in its amendment. This provision requires employers, in addition to funding already existing apprenticeship programs under ERISA, must fund other programs as well, as specified by the City. ERISA preemption is triggered by the existence of a separate fund to support the apprenticeship or training program. *Associated Builders & Contractors v. Michigan Dep't of Labor & Econ. Growth,* 543 F.3d 275, 282 (6th Cir. 2008). Here, the requirement that employers must fund MSDGC Fund 701 and water works Fund 101, creates a separate fund to support the apprenticeship or training programs and requires bidders to contribute to the funds in addition to their own ERISA apprenticeship funds. Furthermore, the City's amendment to this provision also provides that "[t]he payments required under this section shall not be taken from

the fringe benefits of the contractor's employees." Once again, like the health care and retirement funding provisions, the City purports to dictate how such plans are paid for by the employer. The City has no business telling employers how much they must pay into fringe benefit funds which are covered by ERISA.

While the City did amend the RBO provisions at issue, these amendments have clearly not cured the ERISA concerns that existed, and in some instances, have made those concerns worse. The City's amendments, albeit creatively drafted to appear lawful, in practice and as applied, continue to conflict with employer's existing ERISA plans and impose additional requirements on those plans. Thus, the RBO provisions remain unlawful and preempted by ERISA.

### c. **This Case Involves ERISA Plans.**

There is no doubt that this case involves ERISA plans. The RBO provisions at issue in this case deal with core ERISA concepts: health care plans, pension and retirement plans, and apprenticeship. See 29 U.S.C. § 1002(1).

As the City has pointed out, the main purpose of ERISA is to ensure that oversight of Employee Benefit Plans would be subject to a uniform body of benefits law and to minimize employers' burden of complying with conflicting state and federal laws. *See Assoc. Builders & Contrs. V. Mich. Dep't of Labor & Econ. Growth,* 543 F.3d 275, 279 (6th Cir. 2008). The RBO represents exactly what ERISA sought to prevent – a burden on employers to comply with conflicting state and federal laws. The RBO imposes conflicting directions on waterworks project bidders, who are in compliance with their ERISA plans, and who now have to meet additional or conflicting requirements under those same plans in order to qualify as a "responsible bidder."

The RBO effectively mandates that employees must join a union apprentice training

program (CMC 320-5), as this is the only type of apprenticeship program that complies with the RBO. Furthermore, the RBO effectively mandates that employers provide or contribute to health care plans and retirement programs and dictates how employers pay for their employee's health and retirement plans. CMC 320-3(j) and (k). The RBO requires that employers fund a separate training fund and mandates how they fund it. CMC 320-7. These RBO mandates conflict with ERISA plans and impose additional burdens on employers regarding the ERISA plans.

### d. The City did not Adopt the RBO in its Role as a Market Participant.

The "market participant" exception is not applicable to the City. The City attempts to argue that it adopted the RBO in its role as a participant in the market for construction services, not as a regulator. However, in the very next section of the City's Response, the City argues that the RBO is a proper exercise of its municipal authority under its Charter, the Ohio Constitution, and other Ohio law. See Defendant's Response, p. 13, 17. The City sets forth two conflicting arguments: (1) the RBO is not a regulation; and (2) the RBO is a lawful exercise of the City's authority "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws." See Defendant's Response, p. 17. Despite the City's conflicting arguments, neither will save the RBO from ERISA preemption.

The "market participant" exception applies to ERISA preemption where the State is acting as a market participant with no interest in setting policy. *Building & Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.,* 507 U.S. 218, 113 S.Ct. 1190 (1993). This exception is generally applied where the state requires the signing of a Project Labor Agreement (PLA), as courts have held that a PLA does not constitute "state law" for ERISA purposes. *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California*, 159 F.3d

1178, 1182 (9th Cir. 1998). If the state's direct participation in the market is "tantamount to regulation" the "market participant" doctrine will not apply and the state's action will be preempted by ERISA. *Util. Contractors Ass'n of New England, Inc. v. City of Fall River*, CIV.A. 10-10994-RWZ, 2011 WL 4710875 (D. Mass. Oct. 4, 2011).

Here, it is clear that the City was not acting as a "market participant" when adopting the RBO. Where an ordinance establishes certain mandates regarding residency, apprenticeship, and health and welfare and pension plans, that contractors must meet to bid on construction projects, the "market participant" exception does not apply, and the ordinance is preempted by ERISA. *Util. Contractors Ass'n of New England, Inc. v. City of Fall River*, CIV.A. 10-10994-RWZ, 2011 WL 4710875 (D. Mass. Oct. 4, 2011). Furthermore, the City's express reasons for the enactment of the RBO indicate that the RBO is a regulation, and the City was not acting as a market participant. The City states that "the City and the taxpayers…benefit when bidders meet a higher standard of conduct, including taking responsibility for the training of a future skilled workforce…" and "when the City enacted the RBO, and specifically, the provisions from which ACI seeks relief, it recognized the need to 'ensure that the work performed on behalf of [CWW and MSD] is performed by skilled contractors and workers that share the City's commitment to safety, quality, time and budgetary concerns." See Defendant's Response, p. 1, 3. If the City was merely a "market participant," the City would not cite to such broad policy purposes and reasons behind the RBO's enactment. See *Util. Contractors Ass'n of New England, Inc. v. City of Fall River*, CIV.A. 10-10994-RWZ, 2011 WL 4710875 (D. Mass. Oct. 4, 2011), "Broad and varied municipal mandates…are tantamount to regulations."

The undisputed facts demonstrate that the City's enactment of the RBO was in its role as a regulator, and not a market participant. Therefore, the market participant exception does not

apply.

### e. __Home Rule is Subject to the Supremacy Clause.__

The City argues that the RBO is a lawful exercise of the City's authority because the City is a home rule Ohio city. See Defendant's Response, p. 17. However, while home rule may be a defense to state laws, it is still subject to the Supremacy Clause. See *H.D.V.-Greektown, LLC v. City of Detroit*, 06-11282, 2010 WL 3515783 (E.D. Mich. Sept. 8, 2010) modified in part sub nom. *H.D.V.--Greektown, LLC v. City of Detroit*, 06-11282, 2010 WL 4792180 (E.D. Mich. Nov. 18, 2010); *Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 139 (2d Cir. 2006), *Qwest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1269 (10th Cir. 2004). There is no question that the United States Constitution prevails over a city's home rule. See *Id.* The City's authority under its home rule is not a defense to the Supremacy Clause of the United States Constitution.

### f. __ERISA Preemption of the RBO is not Saved by the Fitzgerald Act.__

The Fitzgerald Act, 29 U.S.C. § 50, does not save the RBO from ERISA preemption. The Fitzgerald Act provides: "The Secretary of Labor is authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, [and] to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship...." 29 U.S.C. § 50. The areas with which the Fitzgerald Act is concerned is the safety of apprentices and the standards of apprenticeship. *Associated Builders & Contractors v. Michigan Dep't of Labor & Econ. Growth*, 543 F.3d 275, 283 (6th Cir. 2008).

The RBO provisions at issue do not deal with the safety of apprentices or the standards of

apprenticeship – they mandate participation in an apprenticeship program and provide graduation requirements, they effectively mandate contribution to health care plans and retirement programs and mandate how such programs are funded, and mandate the funding of pre-apprenticeship programs. ERISA's preemption of the RBO provisions would not frustrate or impair the federal-state scheme under the Fitzgerald Act as the RBO provisions do not concern the safety of apprentices and the standards of apprenticeship.

### g. **Standard for an Injunction.**

The four factors that must be considered before a temporary restraining order or a preliminary injunction can be issued are:

1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

2. Whether the movant has shown irreparable injury;

3. Whether the harm to the plaintiff if the injunction is not issued outweighs the harm to the defendant if the injunction is issued; and

4. Whether the public interest would be served by issuing injunctive relief.

See *Overstreet v. Lexington–Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir.2002).

#### i. **There is a Substantial Likelihood That ACI Will Prevail on The Merits of its Claims.**

##### 1. **The City's RBO provisions are Preempted by ERISA.**

The Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) are preempted by Federal law under ERISA and interpose obstacles to the achievement of the discernible objectives set forth by the Federal legislators. ERISA's preemption section, 29 U.S.C. § 1144(a) states that ERISA "shall supersede any and all State

laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. A state law relates to an ERISA plan, and is therefore preempted, if it has a connection with or reference to such a plan. *Associated Builders & Contractors v. Michigan Dep't of Labor & Econ. Growth*, 543 F.3d 275, 280 (6th Cir. 2008) citing *California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.,* 519 U.S. 316, 332 (1997). A state law has an impermissible 'connection with' an ERISA plan if it "directly regulates or effectively mandates some element of the structure or administration of employers' ERISA plans." *Associated Builders & Contractors v. Michigan Dep't of Labor & Econ. Growth*, 543 F.3d 275, 281 (6th Cir. 2008) citing *Retail Indus. Leaders Assoc. v. Fielder,* 475 F.3d 180, 192–93 (4th Cir.2007).

The City's RBO, even as amended, is preempted by ERISA because it has an impermissible connection with ERISA plans, both directly regulating such plans and effectively mandating some element of the structure or administration of the employers'/bidders' ERISA plans. These exact type of requirements that are found in the RBO were held to be preempted by ERISA in *Util. Contractors Ass'n of New England, Inc. v. City of Fall River*, CIV.A. 10-10994-RWZ, 2011 WL 4710875 (D. Mass. Oct. 4, 2011).

ii. **ACI Can Establish Irreparable Harm to its Members Warranting Injunctive Relief.**

The City makes the astounding assertion that ACI's members are not willing to take responsibility for the training of a future skilled workforce. See Defendant's Response, p. 1. Not surprisingly, there is absolutely no citation to any fact to support this claim. The attached affidavit of ACI Executive Director, Terry Phillips, conclusively demonstrates the misleading nature of the City's assertion. ACI members participate in a wide variety of workforce training programs. See Affidavit of Terry Phillips, ¶3. Many of ACI's members have worked on public projects for the City for decades. See Affidavit of Terry Phillips, ¶5. The employers identified in

the Phillips Affidavit are well respected employers who have made significant contributions to this community. There is no doubt concerning their commitment to training. The enactment of the RBO means that many ACI member bidders no longer qualify for the same type of City public projects that they have qualified for, and worked on for many years. Despite the City's suggestion that all ACI members have to do to qualify is simply contract with an apprenticeship program that is compliant with CMC 320-5 prior to executing the contract with the City, a more candid approach would acknowledge that the ACI members must contract with the labor union in order to bid on waterworks projects, as the labor union is the only apprenticeship program that satisfies the requirements under CMC 320-5 as set forth in the 2013 amendment.

The RBO has prematurely eliminated ACI member bidders from being awarded bids for the waterworks projects. See, *e.g., PGBA, LLC v. United States*, 57 Fed. Cl. 655, 664 (2003) ("This court has acknowledged that a lost opportunity to compete may constitute an irreparable harm [.]"); *Glenwood Bridge. Inc. v. Minneapolis*, 940 F.2d 367, 371-372 (8th Cir., 1991) (Although Plaintiff could receive money damages for lost opportunity to receive bid for public works project, irreparable harm exists because of the otherwise unprotected interest in participating in a legal bidding process and the awarding of a legal bid.); *Ainslie Corp. v. Middendorf*, 381 F.Supp. 305 (D. Mass. 1974) (injunction granted to bid protester due to the inadequacy of monetary remedy).

ACI's members will suffer irreparable harm if the City is permitted to continue to award jobs pursuant to its RBO.

### iii. **The Harm to ACI's Members if The Injunction is Not Issued Outweighs the Harm to Third Parties if the Injunction is Issued.**

As the City has stated, the bid date for eight pending CWW and MSD projects has passed. Defendant's Response, p. 19. These eight projects, worth millions of dollars, if allowed to be

awarded pursuant to the City's current RBO, will certainly not be awarded to ACI's non-union members. The immediate disqualification of ACI's members will harm ACI's members by loss of volume of work and business earnings, loss of work due to uneven bidding requirements, fewer projects on which to bid or work, layoffs, and reduced productivity and profit.

While the City argues that the Court order of an injunction will effectively delay completion of vital public infrastructure projects, this is not necessarily true, as the City can promptly redo bids without imposing the unlawful RBO requirements. In fact, the City prior to the enactment of the RBO was able to award bids on public projects. Thus, an injunction by this Court will not unnecessarily delay the completion of the waterworks projects.

iv. **The Preliminary Injunction Will Serve the Public's Interest.**

The public interest would be served by an injunction. Enforcement of the ERISA mandate against non-uniform obligations furthers a primary goal of the Supremacy Clause of the United States Constitution. See U.S. Const. art. VI, cl. 2 and *Pub. Utilities Comm'n of State of Cal. v. United States*, 355 U.S. 534, 78 S. Ct. 446, 2 L. Ed. 2d 470 (1958).

At the local level, the City's taxpayers and rate payers will benefit from an injunction where qualified, willing, and able bidders are permitted to participate in the bidding process. More bidders mean more competition, which leads to lower prices. The bidding process for the Vernon Project described in Paragraphs 36-39 of the Verified Complaint illustrates the adverse economic effects of excluding non-union contractors from the bidding process. After disqualifying the two bids submitted by ACI non-union members, the next lowest bid was over $200,000 higher, a price increase in excess of 25%. A 25% surcharge to guarantee work for union contractors is a high price to charge the taxpayers and rate payers and is not in the public's interest.

**III.** **Conclusion**

Based on the foregoing, ACI respectfully requests that this Court find that: (1) ACI has shown a strong or substantial likelihood or probability of success on the merits; (2) ACI has shown irreparable injury; (3) the harm to ACI if the injunction is not issued outweighs the harm to the Defendant if the injunction is issued; (4) the public interest would be served by issuing the preliminary injunction; and (5) ACI has no adequate remedy at law. Further, ACI requests that this Court grant its Motion for Preliminary Injunction, ordering that:

1. The City of Cincinnati, its agents, employers, officials and/or others in active concert or participation with them are immediately enjoined, restrained, and prohibited from:

> Enforcing the Apprenticeship Requirements in CMC 320-5, the Pre-Apprenticeship Training Fund in CMC 320-7, and the Factors in Determination of Lowest and Best Bidder in CMC 320-3(j) and CMC 320-3(k) in connection with the pending Mohawk Project, Ludlow Project, and pending or future waterworks construction projects for which contracts have not yet been awarded.

Respectfully Submitted,

*/s/ Kevin R. McDermott*
Kevin R. McDermott (0019256)
Barnes & Thornburg LLP
41 South High Street, Suite 3300
Columbus, Ohio 43215
(614) 628-0096
(614) 628-1433 (facsimile)
kmcdermott@btlaw.com

*Trial Attorney for Plaintiff*

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2014, a true and accurate copy of the foregoing Reply in Support of Motion for Injunctive Relief was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's ECF system.


*/s/ Kevin R. McDermott*